UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | Crim. No. 04-242(EGS) |
| v. | ) ) |  |
| DIANNE BROWN | ) ) ) |  |

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Defendant Dianne Brown, through undersigned counsel, respectfully submits her Memorandum in Aid of Sentencing. Ms. Brown reviewed the Pre-Sentence Investigation Report and agrees with the family background, employment information and criminal history findings.

**Procedural History**

Ms. Brown is before the Court awaiting sentencing after she entered a guilty plea on December 15, 2004. Ms. Brown pled guilty to one count of violating 18 U.S.C. § 922(g). Ms. Brown committed the offense on or about April 7, 2004. Pursuant to the conviction Ms. Brown faces a maximum sentence of ten years of incarceration, followed by a term of supervised release of not more than three years, a fine of $250,000.00, and a $100.00 special assessment. Probation Officer Elizabeth Suarez has identified a sentencing range of 24 to 30 months pursuant to the advisory Sentencing Guidelines of the United States Sentencing Commission. The range is based on an offense level of 17 and a Criminal History Category I.

**ARGUMENT IN SUPPORT FOR A SENTENCE OF PROBATION**

Ms. Brown is before the Court after making a significant and inspirational turn in her life. That she is before the Court charged with a criminal case has been a distressing and significant setback. Ms. Brown never imagined that the firearm that she obtained many years ago for protection would result in a criminal conviction with such severe consequences. When the gun was recovered on April 7, 2004 it was found underneath her bed inside of a shoe box. The police who entered her apartment pursuant to a search warrant, were not targeting Ms. Brown for any criminal activity. It was Ms. Brown's daughter, Marsheena Riggsbee who was the object of the investigation for fraud related criminal activity.

When the warrant was executed Ms. Brown was at her place of employment, Tender Care Child Development Center, where she works as a senior staff person. Inside Ms. Brown's apartment the police found, Ms. Riggsbee. After the police learned that the gun was recovered in Ms. Brown's bedroom, they contacted her at work and requested that she return home because they needed to speak with her. Ms. Brown returned home immediately. In response to an officer's question regarding their need to speak to her, Ms. Brown immediately volunteered that it had to be in reference to the gun inside her bedroom. Ms. Brown readily admitted that she owned the gun and that she had obtained it years earlier for protection.

Ms. Brown candidly admitted that she obtained the gun because she was living alone with her daughter. Ms. Brown felt that two woman living alone without a male presence were more vulnerable to the crime that was all too familiar in their neighborhood. Ms. Brown's sense of fear

was exacerbated by the fact that she suffers from anxiety[1]. Sadly, it was Ms. Brown's heightened sense of fear that led to the regrettable mistake of obtaining the gun.

However, that unfortunate mistake took place years ago during which Ms. Brown paid no attention to the gun that she had placed in a shoe box underneath her bed. While the gun sat forgotten in the shoe box, Ms. Brown was in the middle of a personal renaissance. Perhaps, the most significant accomplishment was Ms. Brown's successful struggle in beating her addiction to illegal narcotics. Her recovery was the result of a sustained commitment and perseverance to turn her life around. To her credit she took the opportunities to confront and overcome her addiction to illegal substances. The first step came with her participation and graduation from the six month Karrick Hall Program sponsored by the District of Columbia Department of Human Service see Exhibit 2 (certificate from Karrick Hall dated January 27, 1992.)

Six years later in 1998 Ms. Brown experienced a small setback when she was arrested and convicted for Possession of Cocaine. However, her excellent compliance resulted in the early termination of her probation sentence. Presumably, early termination must have been substantially predicated on testing negative for illegal drugs. With the exception of the 1998 conviction and the instant case Ms. Brown has successfully removed herself from being a defendant or probationer in the criminal justice system.

Remarkably, Ms. Brown's separation from the criminal justice was accompanied by a

---

[1] Ms. Brown is also HIV positive. In order to stay healthy Ms. Brown dutifully takes the required medication and sees her physician on a regular basis. Ms. Brown has made a decision to keep her HIV status a personal affair. Accordingly, undersigned counsel will not address this subject at the sentencing hearing but wants to make sure that the Court is aware of Ms. Brown's medical condition. With this memorandum undersigned is attaching two letters from Ms. Brown's physicians, Dr. Margo Smith and Dr. Meri Kolbrener, respectively who speak directly to her medical condition. See Exhibits 1 and 2

determination and a commitment to become a productive and a valued professional.  Ms. Brown's work ethic is thoroughly documented in Officer Suarez's PSR.  Although Ms. Brown has a checkered criminal history she has never looked for or accepted financial handouts.  On the contrary she has been consistently employed and has taken advantaged of the opportunities for professional advancement.  Today, as she was when she was arrested on April 7, 2004 Ms. Brown is a gainfully employed professional who is respected by her colleagues, supervisors and by the parents who leave their children in her care.  Ms. Brown does her work with love and caring attention to the children who are left under her supervision.  Her job is a central component in her life particularly because she loves working with young children.  This love for children has turned into a career stretching ten years during which Ms. Brown has advanced to the position of senior staff person.

As a senior staff person Ms. Brown has earned the respect of supervisors who have given her the responsibilities for planning and scheduling the daily program for the children at the day care center.  Furthermore, Ms. Brown is responsible for reporting to the parents on a regular basis regarding the children's progress. see  Exhibits 4 and 5 (letters from Ms. Lachell Reed and Ms. Cheryl Smiler)   In short, Ms. Brown's job requires personal responsibility, diligence, and enthusiasm.  It is unquestioned that Ms. Brown possesses these attributes in abundance.

Included with this Memorandum is a letter by Ms. Tia Boyd, who is an Assistant Director with the Tender Care Child Development Center see Exhibit 6 (letter from Ms. Tia Boyd.)   Ms. Boyd succinctly describes the professional commitment that Mr. Brown brings to her job, along with a generous spirit to help others, and the respect and consideration that she gives to old and new friends.  Ms. Boyd's letter aptly and accurately supports Ms. Brown's turn around as a personal renaissance.  Other exhibits also show Ms. Brown's desire to continually improve her professional

skills. Both the job description for the Senior Staff position see Exhibit 7 (Senior Staff Job Description) and Ms. Boyd's letter show that Ms. Brown has a very demanding job and that success depends on enthusiasm and being multi-skilled and multi-faceted. Ms. Boyd's letter answers any question regarding Ms. Brown's ability to fulfill the demands of the job.

Both undersigned counsel and Staff Investigator Santha Lopez-Jarrin have had the opportunity and pleasure of getting to know Ms. Brown during this very difficult time for her. From our first meeting we were impressed with Ms. Brown's character and integrity. Immediately after her first appearance before this Court Ms. Brown made it clear that she wanted to enter a guilty plea. Her decision was based on the simple fact that she had brought the gun into her house. For Ms. Brown the process of challenge the charge would be misleading and dishonest which is inconsistent with her character and moral principles. At this point in her life Ms. Brown is a mature and responsible person who wants to live a lawful and productive life, where her daughter and job are the priorities. As a result Ms. Brown immediately knew that the only correct and honest option was to plea guilty before the Court.

A. **THE SENTENCING FRAMEWORK PURSUANT TO UNITED STATES v. BOOKER, 18 U.S.C. § 3553(a), 18 U.S.C. § 3661. AND 18 U.S.C. § 3661 ALLOW FOR THE IMPOSITION OF A SENTENCE OF PROBATION**

In United States v. Booker, 125 S. Ct. 738, the Supreme Court held that the mandatory sentencing guidelines as they were applied were unconstitutional. The Court based its holding on the fact that judges, not juries, were allowed to decide the facts which determined the maximum sentences to which defendants were subject and that the burden of proof used was a preponderance of the evidence instead of beyond a reasonable doubt. Having found the mandatory guidelines as

applied to be unconstitutional, a different majority of the Court decided that the proper remedy was to sever and excise 18 U.S.C. § 3553(b)(1), which required mandatory application of the guidelines, and § 3742(e), which governed appellate review in a manner no longer relevant to advisory guidelines, thus making the guidelines advisory. Id. at 756-57.

The Court in Booker held that judges are required to "take account of the Guidelines together with other sentencing factors," and to "consider" the guidelines along with all the other required factors (emphasis added). But there is no requirement that a sentence be within the guidelines range, and a number of other statutory factors, which are mandatory, must be followed by the court.

The Second Circuit in United States v. Crosby, 397 F.3d 103 (2005) provides a framework for sentencing pursuant to Booker that takes into account the sentencing guidelines and the sentencing statutory mandates enumerated in 18 U.S.C. § 3553(a) After a determination of the guideline range the Sentencing Court has "[t]he duty imposed by subsection 35539(a)(4), to "consider" it along with all of the factors listed in section 3553(a) Id. 112. This position is reasonable and stands in contrast to the Sentencing Court in United States v. Wilson, 350 F. Supp. 2nd 910, 912 which would continue to give the guidelines "heavy weight".

Thus, pursuant to Booker, courts are now required to impose a sentence "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)" of 18 U.S.C. § 3553(a). These purposes include the necessity

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;

        © to protect the public from further crimes of the defendant; and

        (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Subsections (A) through (D) of § 3553(a) (2) thus highlight the primary purposes of sentencing, including the seriousness of the offense, the need to afford deterrence and protect the public, and the need for rehabilitative or correctional treatment. See also § 3551 (defendant "shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a) (2) . . . "). In determining a sentence consistent with these goals, the court must consider a number of factors, see § 3553(a) (1) - (7), including "the nature and circumstances of the offense and the history and characteristics of the defendant" as well as the sentencing guidelines and policy statements issued by the Sentencing Commission. 18 U.S.C. § 3553(a) (4) & (5). A court may consider all "information concerning the background, character, and conduct of a person convicted of an offense," 18 U.S.C. § 3661.

18 U.S.C. § 3553(a)(1) directs the Court to look at Ms. Brown's history and nature and circumstance of the offense. The nature of the offense, 18 U.S.C. 922(g)(1), is a case of constructive possession of a firearm that was found inside of a shoe box, underneath Ms. Brown's bed. This fact is important because the gun did not present the potential harm that arises with actual possession of the firearm. Moreover, it can be construed that a person who has actual possession of a firearm in a public area has other unlawful motives for carrying the gun.

Arguably, even constructive possession of a firearm in a vehicle poses a greater potential for violence, unintended or intended, than possessing a gun in a bedroom. Finally, the gun was found not because there was evidence that Ms. Brown had possessed it outside of her residence or that she

had shown it to another person.  As the Court knows, the gun was incidently recovered in the course of the investigation of Mareena Riggsbee.  Finally, it is noteworthy that the crime itself, 18 U.S.C. § 922(g)(1), is not classified either as a crime of violence for pre-trial detention purposes pursuant to the Bail Reform Act or as a predicate for either an Armed Career Criminal or Career Offender enhancements <u>see</u> respectively, 18 U.S.C. § 3142(f)(1), 18 U.S.C. § 924(e)(1) and USSG § 4B1.1

Pursuant to offense18 U.S.C. § 3553(a)(1)(2)(A) Ms. Brown's sentence must reflect the seriousness of the offense.  There is no question that Ms. Brown violated the law and that the Court has to address her conduct.  However, the seriousness of the offense has to take into account and result in a sentence that "promote[s] respect for the Law and provide[s] just punishment".  It is unquestioned that Ms. Brown has come along way in learning to conduct herself lawfully and in becoming a productive citizen.

One of the most important components of Ms. Brown's job is to teach respect and good conduct to the young children that she cares and supervises.  Although the children maybe very young the principles of respectful behavior to others is fundamental to every child and is something that is ingrained at a very young age.  Ms. Brown excels in providing and sharing those principles.  Ms. Brown more than teaches those values, those values have become a part of her life.  Ms. Brown's recent history provides the Court with a level of assurance that she will not engage or commit further crimes. The evidence for this inference is her history under Court supervision and the manner in which she has conducted herself professionally.

18 U.S.C. § 3553(a)(2)(D) directs the Court to consider Ms. Brown's sentence in light of the educational or vocational training that will support her rehabilitation and education.  This is hard to address since Ms. Brown is a professional who is appreciated by her colleagues and the parents of

the young children.  Moreover, Ms. Brown has taken advantage of the opportunities that have allowed her to grow and advance in her field. Since Ms. Brown has satisfied and surpassed her professional expectations, the Court's sentence should allow and encourage for the continuation of those efforts.[2] Ms. Brown's efforts and commitment to her professional advancement have been verified by the certificates that she has received throughout her professional career.  Accordingly, her continued development can only take place with Ms. Brown being in the community.

Prior to the instant conviction, Ms. Brown's last two conviction were in 1998 for possession of cocaine and in 1991 for a misdemeanor Bail Reform Act violation.  Thus, during a period of fourteen years Ms. Brown was convicted for two misdemeanor offenses.  While both are serious and they point to a lack of good judgement and responsibility, Ms. Brown took the opportunity that a Judge offered in placing her on probation.  In each case Ms. Brown complied with the conditions of probation and the periods of supervision were terminated successfully.  Thus, while she got herself trouble, Ms. Brown showed the resolve, commitment and discipline to follow a Judge's order and the instructions of a probation officer.

However,  it is very important to look at the instant conviction in the context of the charges and convictions that Ms. Brown had before 1991.  In the instant conviction Ms. Brown was charged with possessing a firearm in her apartment.  There was never any indication that Ms. Brown had carried the weapon on her person or had used them in any other unlawful activity.  The latter factors are important because its behavior that is different from the trouble that Ms. Brown was getting into

---

[2]   See Exhibit 8 (Certificate from Hope Organization); Exhibit 9 (Certificate of Completion from the Rehabilitation Services Administration); Exhibit 10 (Certificate of Completion from Hope Organization); Exhibit 11 (Child Development Associate Credential); Exhibit 12 (State of West Virginia GED Diploma)

when she was a young adult. Looking at the "nature and circumstances" of the conviction in light of Ms. Brown's "history and characteristics" there is compelling evidence that she is a much different person than she was when she was convicted for Distribution of Dilaudid in 1991.

I     **PURSUANT TO <u>BOOKER</u> THE COURT CAN CONSIDER U.S.S.G. § 5H1.1. FACTORS FOR THE IMPOSITION OF A SENTENCE OF PROBATION**

U.S.S.G. § 5H1.1 which were previously prohibited factors, are now available for the Court's consideration. See <u>Ranum</u>, 353 F.Supp. 2d. 984, 986 (Jan. 19, 2005)("The guidelines' prohibition of considering [§ 5H1] factors cannot be squared with the § 3553(a) (1) requirement that the court evaluate the 'history and characteristics' of the defendant."); <u>United States v. Nellum</u>, 2005 WL 300073, at *3 - *4 (N.D. Ind. February 3, 2005)(reducing sentence based on age, family ties, drug addiction, medical service and military service, among other factors, in arriving at post-<u>Booker</u> statutory sentence) Among the factors that the Court can consider are Ms. Brown's age, education, vocational skills, mental and emotional conditions, physical condition, employment record, family ties and responsibilities, role in the offense. A consideration of these factors which have been previously articulated pursuant to 18 U.S.C. 3553(a) go hand in hand with the express language of 18 U.S.C. § 3582. In pertinent part 18 U.S.C. § 3582 (a) states:

> "The Court, in determining whether to impose a term of imprisonment, and if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553(a) to the extent that they are applicable, <u>recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation</u>."(emphasis added)

Because Ms. Brown has made a tremendous turnaround, undersigned counsel request that the Court sentence her to a term of probation. By applying the relevant factors in 18 U.S.C. § 3553 and § 3582, the Court can justify the imposition of such a sentence. While the request may seem

extraordinary, the request is based on Ms. Brown's character, integrity, work ethic and familial like loyalty to friends and family alike.

II.     **EVEN PURSUANT TO THE PRE-BOOKER MANDATORY SENTENCING GUIDELINES MS. BROWN QUALIFIES FOR DOWNWARD DEPARTURES**

Post-Offense Rehabilitation

In United States v. Harrington, 947 F.2d 956, 962 (D. C. Cir. 1991), this circuit determined that post-offense rehabilitation could justify a departure under U.S.S.G. § 3E1.1 as conduct demonstrating acceptance of responsibility. The court left open the question whether a more extensive departure than permitted by that section could be warranted "if the rehabilitation `is so extraordinary as to suggest its presence to a degree not adequately taken into consideration by the acceptance of responsibility reduction.'" Id (citation omitted).

After Harrington was decided, the Supreme Court decided Koon v. United States, 116 S.Ct. 2035 (1966).  In Koon, the Court established a framework for determining whether a particular factor can be the basis for a downward departure:

> "We conclude, then, that a federal court's examination of whether a factor can ever be an appropriate basis for departure is limited to determining whether the Commission has proscribed, as a categorical matter, consideration. If the answer to the question is no-- as it will be most of the time -- the sentencing court must determine whether the factor, as occurring in the particular circumstances, takes the case  outside the heartland of the applicable Guideline." 116 S.Ct. at 2051.

After Koon, courts held that post-offense rehabilitation can be the basis for a downward departure, separate from the adjustment provided for acceptance of responsibility, where circumstances exist which take the case outside the heartland of cases where acceptance of responsibility is usually granted. In United States v. Kapitzke, 130 F.2d 820, 823-24 (8th Cir. 1997), the court held that where the defendant's post-rehabilitation efforts were exceptional enough to be

11

atypical of cases in which an acceptance of responsibility reduction was usually granted, the departure was warranted. Because the defendant in Kapitzke had enrolled in drug treatment and sex therapy programs and had successfully completed both, the reviewing court upheld the departure. Likewise, in United States v. Core, 125 F.3d 74 (2nd Cir. 1997), the court held that " . . . if the defendant achieved a rehabilitation sufficiently impressive to be considered `atypical' and to take his case out of the heartland, we see no reason why this should not be considered . . . a basis for departure." 125 F.3d. 77 (citations omitted). The court in Core specifically addressed the interplay between a downward departure on the ground of post-offense rehabilitation and the two-level reduction in offense level for acceptance of responsibility and concluded that:

> We see no indication that the Commission intended its mention of post-offense rehabilitation as one factor affecting acceptance of responsibility to preclude consideration of rehabilitation as a basis for departure. Acceptance of responsibility is easily achieved and is accordingly of relative low value. Credit for acceptance of responsibility can be earned by any offender who admits the offense, pleads guilty, and is found not to have persisted in criminal conduct. . . . Defendants who accomplish a successful rehabilitation go far beyond what is required to qualify for the deduction under §3E1.1 .Id at 78

Similar reasoning was employed in United States v. Sally,116 F.3d 76 (3d Cir. 1997). In that case, the district court had determined that it lacked authority to depart on the basis of several factors set forth by the defense, including the defendant's post-offense rehabilitative efforts. The circuit court remanded, holding that post-offense rehabilitative efforts could constitute a sufficient basis for a downward departure, provided that the efforts were so exceptional as to remove the particular case from the heartland in which the acceptance of responsibility guideline was intended to apply. 116 F.3d at 80. See also, United States v. Brock, 108 F.3d 31 (4th Cir. 1997) (holding that after Koon, post-offense rehabilitation efforts could provide a ground for departure when they were so

exceptional as to be atypical of those cases in which an adjustment for acceptance of responsibility is granted); United States v. Dyce, 975 F. Supp. 17 (D.D.C. 1997) After Koon, the Seventh Circuit has held that a defendant's remorse may be a ground for a downward departure. United States v. Jaroszenko, 92 F.3d 486, 491 (7th Cir. 1996)

Ms. Brown qualifies for downward departures because her efforts at rehabilitation are so exceptional as to make them atypical of the heartland case where a reduction in offense level is granted for acceptance of responsibility. The offense conduct in this case occurred a couple of years ago although, Ms. Brown pled guilty for possessing the firearm on or about April 7, 2004. Since that time, Ms. Brown has not been re-arrested for any criminal conduct and her compliance with pre-trial release has been impeccable. As the Court knows she been working steadily, and at the time of her arrest she was working at Tender Care Daycare where she still works.

Departure based on a combination of factors

Under Guidelines § 5K2.0, a downward departure may be granted where a combination of circumstances renders a case outside the "heartland" of cases covered by the Sentencing Guidelines. Ms. Brown submits that the combination of her family responsibilities, age, and mental and emotional condition, warrant a departure, and would meet the need for punishment, deterrence, and protecting the public. See, e.g., United States v. Rioux, 97 F.3d 648 (2d. Cir. 1996) (affirming 5K2.0 departure based on combination of defendant's serious medical condition and civic good deeds); United States v. Delgado, 994 F. Supp. 143 (E.D.N.Y. 1998) (granting three-level 5K2.0 departure to first time drug offender based on coercion, aberrant behavior, defendant's fragility, and defendant's exceptionally difficult life) Ms. Brown submits that several of these factors—her precarious physical impairment (her HIV medical status), family responsibilities, and mental and

13

emotional condition—warrant departures standing alone and apart from a none guideline sentence pursuant to <u>United States v. Booker</u>.

**CONCLUSION**

Ms. Brown has made significant accomplishments in her adult life. Not only has she overcome an addiction that destroys people, but she has successfully battled a pernicious illness through a sustained discipline and religious faith. In the process she has become a productive, respectful and respected member family member, professional worker and church member. Ms. Brown wants to continue the positive and productive life that she has been living for the last six years, and fourteen years with exception of the 1990 conviction. Ms. Brown serves as a unique and inspiring example of rehabilitation achieved through diligence, commitment and discipline and from the opportunities that she took when she was on probation. For these reasons undersigned counsel respectfully requests that the Court sentence Ms. Brown to a term of time of probation.

Respectfully submitted,

A.J. Kramer
Federal Public Defender

_____/s/_____
Carlos J. Vanegas
Assistant Federal Public Defender
625 Indiana Ave., N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500